**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FIRST MERCURY INSURANCE CO., : | |
| : | |
| Plaintiff, : | **OPINION** |
| : | |
| v. : | Civ. No. 2:12-cv-06527 (WHW) |
| : | |
| JAY S. MARKOWITZ, ESQ., JIMMY : | |
| MASARWA, TWO JAYS REAL ESTATE, : | |
| INC., MOHAMMED ABBASI, NORA : | |
| ABASSI, and ABBASI REALTY, INC., : | |
| : | |
| Defendants. : | |

**Walls, Senior District Judge**

Defendants Jimmy Masarwa ("Masarwa") and Two Jays Real Estate, Inc. ("Two Jays") (collectively, "Defendants") move for partial summary judgment. They seek a finding that Plaintiff First Mercury Insurance Co. ("First Mercury") is estopped from denying coverage under the insurance policy at issue in this case. First Mercury insists it is not so estopped. Under Federal Rule of Civil Procedure 78, this motion is decided without oral argument. Defendants' motion is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

First Mercury provides professional insurance to lawyers. It is domiciled in Illinois with its principal place of business in Michigan. Defs.' Statement of Undisputed Material Facts ("SOF") ¶ 8 (ECF No. 46-1); Pl.'s Resp. to Statement of Undisputed Material Facts ("Resp. to SOF") ¶ 8

**NOT FOR PUBLICATION**

(ECF No. 50).[1] First Mercury is an eligible surplus lines insurer in the State of New Jersey, and is owned by Crum & Forester, which is located in New Jersey.[2] SOF ¶ 8; Resp. to SOF ¶ 8. First Mercury issued Professional Liability Policy No. FMLP003127 ("the policy") in New York to the Law Offices of Jay S. Markowitz ("Markowitz"), located at 159-16 Union Turnpike, Fresh Meadows, New York, for the period of April 20, 2010 to April 20, 2011. SOF ¶¶ 1, 8; Resp. to SOF ¶ 1, 8. The policy contained a $250,000 limit per claim and a $500,000 limit in the aggregate. SOF ¶ 8; Resp. to SOF ¶ 8. Markowitz is an attorney admitted to practice in New York; he is not admitted in any other state. Resp. to SOF ¶ 8; Defs.' Reply to Pl.'s Resp. to SOF ("Reply SOF") ¶ 8 (ECF No. 53-1). On February 22, 2012, Markowitz and Masarwa formed Two Jays in New Jersey for the purpose of purchasing properties in New Jersey.[3] SOF ¶ 2; Resp. to SOF ¶ 2; Reply SOF ¶ 2.

The parties to this motion represent that in June 2010 Masarwa was fraudulently induced by Sufian Abbasi to enter into a real estate investment scheme concerning properties in Newark, New Jersey. SOF ¶ 4; Resp. to SOF ¶ 4. In January 2011, Masarwa brought suit in Superior Court of New Jersey, Law Division, Essex County, Dkt. No. ESX-L-312-11, against Sufian Abbasi and others. SOF ¶ 4; Resp. to SOF ¶ 4. Also in January 2011, Markowitz notified First Mercury of a potential claim by Masarwa against him for legal malpractice related to the fraud by Sufian Abbasi. SOF ¶ 9; Resp. to SOF ¶ 9. Then, in May 2011, Markowitz notified First Mercury that he had been

---

[1] In some instances First Mercury indicates a fact is "Disputed" but its response does not actually dispute any of the Defendants' assertions. Rather, the response sets forth a position related to the factual assertion – such as a qualification, elaboration, or related argument – without actually disputing the assertion. The Court will treat issues not actually disputed as undisputed, despite the label "Disputed" used by First Mercury.

[2] Because of this relationship, Crum & Forester and First Mercury are at times used interchangeably in this opinion.

[3] The parties dispute Markowitz's role with respect to Two Jays. The relationship between Markowitz, Masarwa, and Two Jays is for future resolution; it is irrelevant for purposes of this motion.

**NOT FOR PUBLICATION**

served with a third party complaint filed by the defendants in the underlying action. SOF ¶ 10; Resp. to SOF ¶ 10. Kimberly Russell of Crum & Forster sent a letter to Markowitz on June 2, 2011, advising him that Crum & Forster would be adjusting the matter and that First Mercury accepted the defense subject to a reservation of rights. SOF ¶ 10; Resp. to SOF ¶ 10. Ms. Russell sent another letter on September 19, 2011, memorializing Crum & Forster's understanding with regard to the posture of the underlying action. SOF ¶ 10, Hildner Decl. Ex. D. The letter indicated that Capehart Scratchard, P.A. had been retained by First Mercury to represent Markowitz's interests. *Id.* That firm filed an answer to the third party complaint on Markowitz's behalf on October 19, 2011. SOF ¶ 11; Resp. to SOF ¶ 11.

On January 13, 2012, Masarwa filed a second amended complaint in the Superior Court of New Jersey on behalf of himself and Two Jays, which included Markowitz as a direct defendant and alleged that he had negligently and carelessly performed his duties as an attorney. SOF ¶ 12; Resp. to SOF ¶ 12. After an unsuccessful attempt to resolve the dispute through mediation, SOF ¶ 13; Resp. to SOF ¶ 13, Ms. Russell, who had attended the mediation, sent Markowitz a "supplemental reservation of rights" on February 15, 2012 based on information allegedly learned in the mediation session, which stated:

> **Please be advised that First Mercury reserves the right to deny or limit coverage as the Insured may not have been performing Professional Services as contemplated in the policy, as Mr. Markowitz had entered a business agreement with [Masarwa] with respect to the underlying transaction(s) which are the subject of the litigation.**

SOF ¶ 14, Hildner Decl. Ex. M; Resp. to SOF ¶ 14. The letter further read:

> **Please be advised that First Mercury reserves the right to deny coverage for Damages arising out of this Claim based upon the underlying business agreement concerning the Two Jays Real Estate venture and how compensation for such venture was to be obtained by the Insured.**

SOF ¶ 14, Hildner Decl. Ex. M; Resp. to SOF ¶ 14. Markowitz replied on March 6, 2012, stating that he was not partners in any business venture with Masarwa but was solely his lawyer. SOF ¶ 15; Resp. to SOF ¶ 15.

Despite the concerns expressed by First Mercury, Capehart Scratchard filed an answer to Masarwa's second amended complaint on Markowitz's behalf on March 7, 2012. Throughout discovery, which proceeded into the fall of 2012, Capehart Scratchard continued to represent Markowitz, with First Mercury paying its fees and expenses. SOF ¶¶ 17-18; Resp. to SOF ¶¶ 17-18.

On October 16, 2012, attorneys for First Mercury sent Markowitz a letter advising him that it was denying coverage based upon the results of an investigation it had conducted. SOF ¶ 19, Hildner Decl. Ex. Q. The letter further advised Markowitz that it had no obligations to make any payment for a judgment or settlement obtained against him and that it would no longer pay his counsel fees. *Id.* The letter also indicated that First Mercury would be filing a declaratory judgment action against Markowitz unless he conceded to the denial of coverage, which it then filed in this Court on that same date, October 16, 2012. *Id.*; SOF ¶ 20; Resp. to SOF ¶ 20.

On December 12, 2012, Markowitz advised the attorneys for First Mercury that he did not accept that First Mercury had a right to deny coverage. SOF ¶ 21, Hildner Decl. Ex. R. He further advised First Mercury that if it did not resume his defense, it was his intention to negotiate and enter into a consent judgment with Masawra without further notice to First Mercury, and would provide Masawra with assignment of his rights, claims, and causes of action against First Mercury. *Id.* First Mercury responded by letter dated December 19, 2012, and Markowitz replied on December 21, 2012. SOF ¶ 21; Resp. to SOF ¶ 21.

**NOT FOR PUBLICATION**

On January 18, 2013,[4] Markowitz, Masawara, and Two Jays entered into a consent judgment in the underlying action. Opp'n Mot. to Dismiss, Decl. of J. Barry Cocoziello Ex. A (ECF No. 25-1). It ordered "that final judgment is hereby entered in favor of the plaintiffs, Jimmy Masarwa and Two Jays Real Estate, Inc., against the defendant, Jay S. Markowitz, Esq." in the amount of $310,000, consisting of $240,000 in compensatory damages and $70,000 in attorneys fees. *Id.* It also required "Jay S. Markowitz, Esq. shall pay to the plaintiffs the sum of . . . $5,000 . . . in partial satisfaction of this judgment within thirty (30) days of the date hereof." *Id.* Markowitz "grant[ed], assign[ed] and transfer[ed]" to Masarwa and Two Jays "all rights, claims, and causes of action, including but not limited to those for indemnification, breach of contract, bad faith, wrongful failure to settle within the Limits of Liability and the award of attorneys fees and costs, which he has or may have hereafter against First Mercury." *Id.* It further detailed "[i]f the defendant complies with the terms of the judgment, the plaintiffs shall not seek to satisfy the unpaid balance of this judgment from defendant's personal or business income and assets, but rather shall limit satisfaction and collection of this judgment to any monies they recover from First Mercury." *Id.*

First Mercury's complaint in this Court is against Markowitz, Masawra, Two Jays, Sufian Abbasi, Northeast Investment Concepts, LLC, Gershon Adijaye, Mohammed Abbasi, Nora Abbasi, Abbasi Realty, Inc., Keller Wiliams Realty, and Keller Williams Holding, LLC seeking a declaration that it has no obligation to provide coverage to Markowitz. *See* Compl. (ECF No. 1).

Masawra and Two Jays allege two counterclaims against First Mercury. ECF No. 17. First, they allege First Mercury breached Markowitz's policy by denying coverage for the underlying action. Am. Answer ¶ 13. They seek a declaration from this Court that the policy provides defense

---

[4] In their statements of undisputed facts, the parties state that this occurred on January 13, 2013. But this is directly contradicted by the copy of the consent judgment previously submitted to the Court, which has a date of January 18, 2013. The Court attributes this to an oversight on the part of the parties and uses the January 18 date.

**NOT FOR PUBLICATION**

and indemnity coverage to Markowitz. *Id.* ¶ 18. Second, they seek recovery from First Mercury for the payment of the consent judgment entered into by Markowitz, Masarwa, and Two Jays for the amount of $310,000. *Id.* ¶ 30. On January 24, 2013, First Mercury filed a motion to dismiss the counterclaims, ECF No. 19, which this Court denied by opinion and order dated August 14, 2013, ECF Nos. 33, 34.

In their motion for partial summary judgment, Defendants seek a finding that First Mercury is estopped from denying coverage under the policy. They argue that when First Mercury assumed the defense of Markowitz it did so without a valid reservation of rights under New Jersey law. Mem. of Law of Defs. in Supp. of their Mot. for Partial Summ. J. ("Mot. Summ. J.") at 4 (ECF No. 48). Under New Jersey law, Defendants argue, this means First Mercury was estopped from withdrawing its defense and denying coverage under the policy regardless of whether they might have otherwise been entitled to do so. *Id.* Defendants maintain that such a finding by the Court will result in dismissal of the complaint and a declaration that First Mercury breached its obligations to Markowitz when it denied coverage and withdrew its defense. *Id.* at 3.

First Mercury opposes the motion. It argues that the law of New York, and not that of New Jersey, governs the policy and the question of whether First Mercury validly reserved its rights. Resp. Mem. of Law in Opp'n to Mot. for Partial Summ. J. ("Opp'n Mem.") at 5 (ECF No. 50). First Mercury maintains that its reservation of rights was valid under New York law, so it may not be estopped from denying coverage. *Id.* Because the Court agrees with First Mercury, Defendants' motion for partial summary judgment is denied.[5]

---

[5] The Court need not address First Mercury's remaining arguments.

**NOT FOR PUBLICATION**

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Each party must support its position by "citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1).

## DISCUSSION

For purposes of this motion, the parties do not dispute any of the material facts: their dispute is over the legal conclusions to be drawn from those facts. The Court concludes that New York law applies to the policy and the question of whether First Mercury validly reserved its rights. Under New York law, Defendants' estoppel argument fails and their motion for summary judgment is denied.

A federal court applies the choice of law rules of its forum state – here, New Jersey – to determine which law controls in cases under its diversity jurisdiction. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013). "New Jersey has adopted the 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws. This is a two-part test." *Maniscalco*, 709 F.3d at 206 (citing *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (2008)). "[T]he first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." *Camp Jaycee*, 197 N.J. at 143 (quoting *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006) (further citation omitted)). "If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same."

**NOT FOR PUBLICATION**

*Lebegern*, 471 F.3d at 428. "If, however, an actual conflict is found to exist, the inquiry proceeds to the second step." *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010).

"Under the second part of the inquiry, the court must determine which jurisdiction has the 'most significant relationship' to the claim." *Maniscalco*, 709 F.3d at 207 (quoting *Camp Jaycee*, 197 N.J. at 144). To make that determination, courts look to the Second Restatement, which "provides specific guidance for resolving particular types of cases." *Camp Jaycee*, 197 N.J. at 140; *see also Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 446 (D.N.J. 2012) (court "must weigh the factors set forth in the Restatement section that corresponds to Plaintiff's cause of action"). "The Second Restatement assessment takes place on an issue-by-issue basis. It is qualitative, not quantitative." *Camp Jaycee*, 197 N.J. at 143 (citations omitted). "[I]n balancing the relevant elements of the most significant relationship test," courts should "apply the law of the state that has the strongest connection to the case." *Id.* at 155.

**A. An Actual Conflict Exists Between the Law of New York and New Jersey**

Defendants argue that "it is a longstanding rule under New Jersey law that if an insurance carrier assumes the defense of an insured without properly reserving a right to deny coverage, the carrier cannot later deny coverage to the insured." Mot. Summ. J. at 9. Here, Defendants' contend that First Mercury's reservation of rights was invalid because it did not properly obtain the consent of the insured for it to assume the defense of the underlying action subject to its reservation of rights. *Id.* at 9-10. In *Merchants Indemnity Corp. v. Eggleston*, the New Jersey Supreme Court, Weintraub, C.J., wrote:

> [W]e are satisfied that if a carrier wishes to control the defense and simultaneously reserve a right to dispute liability, it can do so only with the consent of the insured. As we have said, an agreement may be inferred from an insured's failure to reject an offer to defend upon those terms, *but to spell out acquiescence by silence, the letter must fairly inform the insured that the offer may be accepted or rejected.*

**NOT FOR PUBLICATION**

37 N.J. 114, 127-28 (1962) (emphasis added). Because none of the reservation of rights letters informed Markowitz that he had the right to accept or reject First Mercury's defense under the reservations of rights, Defendants' maintain that those reservations were invalid and First Mercury was estopped from later denying coverage based on them. Mot. Summ. J. at 10.

The parties agree that in New York the law is different. *See* Opp'n Mem. at 10 ("Under New York law, there is absolutely no requirement whatsoever that an insurer advise an insured that it has a right to accept or reject a defense under a reservation of rights."); Reply Mem. of Law of Defs. in Support of Mot. for Partial Summ. J. ("Reply Mem.") at 3 (ECF No. 53) ("The insured need not be informed he has a right to accept or reject this conditional defense. If he wants to reject it, the burden is on him to do so."). *See also Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, 277 F. Supp. 2d 245, 254 (S.D.N.Y. 2003), *aff'd* 108 F. App'x 663 (2d Cir. 2004).

The laws of New York and New Jersey conflict on this dispositive issue. The Court turns to determine which state has the more significant relationship to this dispute.

### B. New York Law Applies

The Court first addresses a preliminary issue raised by Defendants: What is the proper contract to evaluate? First Mercury takes it as a given that the policy is the relevant contract to evaluate. *See* Opp'n Mem. at 6-10. But Defendants argue that the reservation of rights letters constituted a separate agreement (or attempt at forming an agreement), which should be the focus of the Court's inquiry. *See* Reply Mem. at 2-15.

The Court finds Defendants' argument unpersuasive. Defendants begin by stating that "Courts in both New Jersey and New York have recognized that a reservation of rights is an agreement between an insurer and its insured . . . ." *Id.* at 2. They then point to cases from each state relating to the issue in this motion – whether an insured tacitly assents to an insurer's

9

reservation of rights. *See Eggleston*, 37 N.J. at 126 ("The classic mode of reservation is a nonwaiver agreement between the insured and the insurer."); *Weatherwax v. Royal Indemn. Co.*, 250 N.Y. 281, 287 (1929) (reservations or conditions imposed by insurer may be "assented to by the insured through tacit acquiescence"). Courts in those cases use the language of "agreement" to ensure that the insured does not lose control of its defenses subject to a reservation of rights without consenting to the arrangement. As the Defendants themselves quote in their opening brief, "if a carrier wishes to control the defense and simultaneously reserve a right to dispute liability, it can do so only with the consent of the insured." Mot. Summ. J. at 10 (quoting *Eggleston*, 37 N.J. at 127-28 (quotation marks omitted)). But Defendants refer to or cite no case for the proposition that the reservation of rights letters are what should be evaluated for purposes of choosing which state's laws apply.

There is good reason for this. The entire contractual relationship between the insurer and insured arose from the insurance policy. The policy is what prompted Markowitz to alert First Mercury of potential claims against him. The policy is what caused First Mercury to accept the defense and issue the reservations of rights, the validity of which are now at issue. And it is the assignment of rights under the policy by Markowitz to Defendants, and the issue of whether First Mercury is liable under the policy, that gave rise to the current dispute. It is crystal clear to this Court that the policy that created the entire relationship from which the facts of this case resulted is the relevant contract on which to perform a choice of law analysis.

Under New Jersey law, the governing law in a contract case is that of the jurisdiction with the most significant relationship and closest contacts with the transaction and the parties. *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 35-37 (1980); *Keil v. National Westminster Bank*, 311 N.J. Super. 473, 485 (App. Div. 1998). To determine which state has more

**NOT FOR PUBLICATION**

significant contacts with the parties and the contract, New Jersey courts look to the following non-exclusive contacts listed in section 188 of the Restatement (Second) of Conflict of Laws:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188(2) (1971); *see, e.g.*, *Keil*, 311 N.J. Super. at 485.[6]

In addition, courts may consider the factors relevant to the applicable rule of law in section 6 of the Restatement:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement § 6; *see General Ceramics Inc. v. Firemen's Fund Ins. Cos.*, 66 F.3d 647, 653 (3d Cir. 1995). There is a presumption that the law of the place of contracting should apply to the interpretation of the contract. "Because the law of the place of contract 'generally comport[s] with the reasonable expectations of the parties' concerning the applicable and controlling legal principles, 'that forum's law should be applied unless the dominant and significant relationship of another state to the parties or the underlying issue dictates that this basic rule [should] yield.'" *Keil*, 311 N.J. Super. at 484 (quoting *Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co.*, 134 N.J. 96, 102 (1993)). "This rule is to be applied unless the dominant and significant relationship of

---

[6] Although First Mercury also argues that section 193 of the Restatement is relevant, the Court agrees with Defendants that it is not because that section, by its terms, applies only to evaluating the "validity" of certain types of insurance contracts. Restatement § 193. This motion and issue do not concern the validity of the contract itself.

**NOT FOR PUBLICATION**

another state to the parties and the underlying issue dictates that this basic rule should yield." *Estate of Simmons*, 84 N.J. at 37.

In this case, the factors of section 188 of the Restatement point decisively to a finding that New York law applies to the contract and issue before the Court.[7] First, the policy was issued to Markowitz at a New York address to cover a New York law practice of an attorney who is licensed to practice only in New York. Resp. to SOF ¶ 8; Reply SOF ¶ 8; Opp'n Mem. at 8. The policy was also issued under the New York Surplus Lines Law. Resp. to SOF ¶ 8; Reply SOF ¶ 8; Opp'n Mem. at 8. The Court finds that the place of contracting, factor (a), was New York state, meaning that its laws are presumptively applicable. *Keil*, 311 N.J. Super. at 484. The place of negotiation, factor (b), was also New York. *See* Restatement § 188 cmt. f ("When the place of negotiation and the place of performance are in the same state, the local law of this state will usually be applied to govern issues arising under the contract . . . . A state having these contacts will usually be the state that has the greatest interest in the determination of issues arising under the contract.")

As for factor (d) – the subject matter of the contract – that was undeniably Markowitz's New York practice. As the comment to the Restatement explains, "[t]he state where the thing or the risk is located will have a natural interest in transactions affecting it. Also the parties will regard the location of the thing or of the risk as important." § 188 cmt. e. In this case, the risk insured was the possibility of Markowitz committing legal malpractice in New York. It matters not that the underlying case arose out of Markowitz's alleged practice of law in New Jersey. *See Jaworowski v. Guerin*, No. A-4881-06T3, 2008 WL 2219934, at *7 (N.J. Super. Ct. App. Div. May 30, 2008) ("The reasonable expectation of Liberty was that it was agreeing to insure defendant against claims

---

[7] In response to First Mercury's detailed choice of law analysis with respect to the policy, Defendants chose, in their reply brief, only to conduct a choice of law analysis with respect to the reservation of rights letters. As such, they have left essentially undisputed First Mercury's analysis and contentions.

12

**NOT FOR PUBLICATION**

of legal malpractice arising out of his practice of law in New York, not his unauthorized practice of law in New Jersey."). Factor (c) – the place of performance – also points to New York. Markowitz performed by purchasing insurance for his place of business there, and First Mercury insured a practice based entirely in New York. While the final factor – the domicile, residence, place of incorporation, or place of business of the parties – might point to New York, New Jersey, and other states, that factor will not impact this Court's finding that the section 188 analysis results in an application of New York law.

As for the section 6 factors, the Court agrees with First Mercury: "New Jersey has absolutely no interest in this coverage dispute which involves a Policy issued to a New York insured, at a New York address, to cover New York operations." Opp'n Mem. at 9. And though the underlying transaction involved New Jersey properties, the reasonable expectations of the parties also point to New York: "First Mercury could have in no way anticipated that an attorney who was solely admitted in New York would have represented a client who was purchasing New Jersey properties," and "Markowitz, an attorney only admitted in New York and no other jurisdiction" could not "have any reasonable expectation that New Jersey law apply to the Policy." *Id.*

New York law applies to the policy and coverage disputes, including the question of whether First Mercury's reservations of rights were valid.

### C. Under New York Law, Defendants' Estoppel Argument Fails

Defendants admit that their argument depends upon a finding that New Jersey law applies. They concede that the "letters issued by First Mercury are consistent with New York law under which acceptance of the defense may be by tacit acquiescence." Reply Mem. at 3. Defendants' motion for summary judgment is based entirely on the argument that First Mercury's reservation

13

**NOT FOR PUBLICATION**

of rights was invalid under New Jersey law, estopping it from denying coverage under the policy. Because the Court has found that New York's law, and not New Jersey's, applies, the motion for partial summary judgment is denied.

## CONCLUSION

Defendants' motion for partial summary judgment is denied. An appropriate order follows.

May 7, 2014

**/s/ William H. Walls**
United States Senior District Judge

14