**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CHAMBERS OF
**CATHY L. WALDOR**
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
ROOM 4040
NEWARK, NJ 07101
973-776-7862

*ALL COUNSEL VIA CM/ECF*

**LETTER OPINION AND ORDER**

Re:    **First Mercury Insurance Company v. Markowitz, et al.**
       **Civil Action No. 2:12-cv-6527 (WHW)(CLW)**

Dear Counsel:

This matter is before the Court upon the application of Plaintiff, First Mercury Insurance Company for an Order determining that Defendant Jay S. Markowitz, Esq., has waived attorney-client privilege with respect to documents provided by his attorneys, Capehart & Scatchard, in a prior matter. Jimmy Masarwa and Two Jays oppose this application and cross-move for an Order precluding First Mercury from using any of those documents in this matter. The Court held oral argument on the applications on March 27, 2015. For the reasons that follow, the Court will grant First Mercury's motion, and deny Masarwa and Two Jays' cross-motion.

**I.    Background**

This is a declaratory judgment action filed on October 16, 2012 by First Mercury Insurance Company ("First Mercury") seeking a declaration that pursuant to the Other Business Exclusions of a professional liability insurance policy issued to the Law Offices of Jay S. Markowitz, it has no obligation provide coverage for claims asserted against its insured. Compl., ECF No. 1, ¶ 42. The underlying Superior Court action, Docket No. ESX-L-312-11, alleges that Jimmy Masarwa ("Masarwa"), President and sole shareholder of Two Jays Real Estate ("Two Jays"), a New Jersey company, was induced to enter into a fraudulent real estate scheme concerning properties in Newark, New Jersey, and his investment in the real estate transaction was lost due to the monies not properly being held in escrow and wrongfully converted. See August 14, 2013 Opinion on Motion to Dismiss (ECF No. 33), at p. 2. Masarwa also sought recovery from Markowitz for malpractice in relation to his legal representation of Two Jays and Masarwa in the real estate transaction. Id. at ¶ 110.

First Mercury initially provided legal representation to Markowitz in the underlying action. To that end, First Mercury, through its successor and adjustor, Crum & Forster Insurance Company, retained the services of Peter S. Bejsiuk, Esq., of Capehart & Scatchard ("Capehart") to represent Markowitz. However, on October 16, 2012, First Mercury, through its coverage counsel, Patti F. Potash and Craig L. Rokuson of White Fleischner & Fino, LLP notified Markowitz that it was withdrawing its defense of Markowitz and advised him that First Mercury had no further responsibility for counsel fees and costs incurred on behalf of Markowitz in his

defense. Denial of Coverage Letter, Pl.'s Mot. to Compel, Affidavit of Nicholas A. Paone, Ex. D. First Mercury advised Markowitz that the New Jersey corporate records for Two Jays, "list[s] [Markowitz] as the only officer or principal of Two Jays. As a result of [Markowitz's] role as officer or principal in Two Jays, Exclusions VI (Other Business Exclusion) and XIII (Owned Business Enterprise Exclusion) apply and exclude coverage for the Masarwa lawsuit." Id.

Markowitz then assumed his own defense, and on January 18, 2013, he and Masarwa entered into a consent agreement whereby, along with a monetary judgment, Markowitz "grant[ed], assign[ed] and transfer[ed]" to Masarwa and Two Jays "all rights, claims, and causes of action, including but not limited to those for indemnification, breach of contract, bad faith, wrongful failure to settle within the Limits of Liability and the award of attorney's fees and costs, which he has or may have hereafter against First Mercury." Pl.'s Mot. to Compel, Affidavit of Nicholas A. Paone, Ex. E.

Meanwhile, on October 16, 2012, First Mercury instituted this action seeking a declaratory judgment that pursuant to the Other Business Exclusions of a professional liability insurance policy issued to the Law Offices of Jay S. Markowitz, it has no obligation provide coverage for claims asserted against its insured, and discovery commenced after a conference with this Court pursuant to Fed. R. Civ. P. 16 on March 14, 2013. On April 11, 2013 Masarwa and Two Jays served their first set of interrogatories and document demands on First Mercury, which included a demand for "any and all documents inclusive of communications by and between [First Mercury] and . . . Capehart & Scatchard of or relating to the claim made against Jay Markowitz by Jimmy Masarwa [or] Two Jays Real Estate. . . ." Pl.'s Mot. to Compel, Affidavit of Nicholas A. Paone , Ex. G. Upon receiving the request, First Mercury objected to the interrogatory and document demand on the basis that the request "calls for production of privileged information." Id. at Ex. H.

In an effort to obtain those documents, on May 29, 2013 Jay Markowitz provided a letter to Barry Cocoziello, Esq., counsel for Masarwa and Two Jays in this action, which stated, in part: "I have agreed to waive any attorney/client privilege I have or may have with First Mercury Insurance Company, Crum & Forster, and/or Capehart Scatchard[,] P.A." Id. at Ex. I. To further effectuate obtaining these documents, on June 26. 2013 Markowitz drafted a letter to Peter Bejsiuk authorizing and requesting Capehart forward to Mr. Cocoziello, a complete copy of Capehart's file related to its defense of Markowitz in the Superior Court matter. Id. Attached to this correspondence was Markowitz's aforementioned May 29th letter noting his intention to waive his attorney/client privilege. Id. These two letters were packaged with a third letter, drafted on June 27, 2013 by Thomas V. Hildner, Mr. Cocoziello's law partner, and sent to Mr. Bejsiuk.

Upon receiving these letters, on or about July 24, 2013, Bejsiuk and Capehart provided the documents in response to Markowitz and Hildner's letters. On August 8, 2013 Hildner notified First Mercury's counsel, White Fleischner & Fino, that a number of documents appeared to be missing from Capehart's production and requested that they forward same. Craig Rokuson of White Fleischner & Fino, responded and indicated that Capehart was in a better position to provide those documents, which they would provide in a supplemental production. Capehart produced all of the remaining documents in their possession, providing these documents to all counsel in this matter, including counsel for First Mercury. Among the documents included with the supplemental production was a January 9, 2012 email (the "Disputed Email"), from Markowitz to Bejsiuk that is the subject of this dispute. The email contains Markowitz's initial comments to his

counsel in furtherance of responding to a set of interrogatories propounded on him by Mohammed Abbasi in the Superior Court action. In particular, interrogatory number 13 inquired into the operating structure of Two Jays. Markowitz's response to counsel stated:

> ***Let's talk about this one. I believe that I originally started the company as a 50% shareholder and then I withdrew my interest. There was never a formal operating agreement or anything like that. I formed the company at Jimmy's request. We had a [sic] oral agreement that in the future if we invested in properties, Jimmy and I would invest together and split profits, but we never made any such investments, and this transaction was 100% between Jimmy and Sufian. I think that Jimmy's New Jersey lawyer also responded to a similar interrogatory in this case, and I want to stay consistent with the answers.

See Letter from Barry Cocoziello to Adam Stark, Affidavit of Nicholas A. Paone, Ex. A [ECF No. 70]. Markowitz and counsel for Masarwa and Two Jays indicated they were unaware that when Capehart provided these documents to them, they were also sending the documents to counsel for First Mercury. Opp. to Mot. to Compel, Dec. of Barry Cocoziello, ¶ 12 [ECF No. 68–3]. As such, it was not until Markowitz's deposition on November 18, 2014 that he, and counsel for Masarwa and Two Jays, realized the documents had been also given to counsel for First Mercury. Id.

Discovery in this case slowed considerably following the entry of an Order directing the parties to attend a Court-ordered settlement conference to be held on December 10, 2013. ECF No. 36. However, during a November 6, 2013 conference call with the Court, counsel for First Mercury indicated that it wanted to take Jay Markowitz's deposition on the issue of Markowitz's relationship with Two Jays. See Dec. 2, 2014 Letter from Cocoziello, ECF No. 62, pp.1–2. But the Court declined to decide First Mercury's application at that time, in light of counsel for Masarwa and Two Jays having requested leave to file a motion for partial summary judgment. Id. That motion sought to assert that First Mercury was "estopped from asserting any right it might otherwise have had to deny coverage and defense to Markowitz under his legal malpractice policy." See Dec. 4, 2013 Letter from Cocoziello, ECF No. 39. The Court adjourned the settlement conference and permitted Masarwa and Two Jays to file their motion. On May 7, 2014 Judge Walls denied Masarwa and Two Jays motion for partial summary judgment. ECF No. 54. Following the entry of Judge Walls' Opinion and Order denying the motion for partial summary judgment, discovery recommenced and the Court, during a May 13, 2014 teleconference, indicated that First Mercury would be permitted to depose Markowitz on the issue of his relationship with Two Jays. See Dec. 2, 2014 Letter from Cocoziello, ECF No. 62, p. 2.

On November 18, 2014 the parties met for Jay Markowitz's deposition. During that deposition First Mercury sought to question Markowitz about the Disputed Email. Rather than respond to the questions, Markowitz invoked attorney-client privilege and refuse to discuss the Disputed Email. Counsel for First Markowitz wrote to the Court on November 20, 2014 raising this issue and asking for a conference call to discuss further, ECF No. 60, and Counsel for Masarwa and Two Jays responded on December 2, 2014. ECF No. 62. This Court held a conference call on December 12, 2014 to discuss the issues that arose at deposition, and these motions followed.

## II.     Arguments

### a.     First Mercury's Argument

First Mercury's Motion requests that the Court issue an Order determining that Markowitz has waived privilege with respect to the documents produced by the Capehart firm (the "Capehart Documents"), specifically the January 9, 2012 Disputed Email. Pl.'s Br. in Support at 2. In support of its application, First Mercury first argues that Markowitz cannot selectively waive the attorney-client privilege for some parties, effectively using privilege as both a sword and a shield to share documents beneficial to his case while retaining documents that may be harmful. Id. at 7. First Mercury bases its argument on the Third Circuit's decision in Westinghouse Elec. Corp. v. Republic of Phil., 951 F.2d 1414 (3d Cir. 1991), whereby the court declined to permit "selective waiver" of attorney-client privilege so as to allow one party to disclose information to a governmental agency, but not to an adverse party, and retain the privilege. Id. at 1425.

Second, First Mercury argues that the common interest doctrine—a recognized exception to the general rule that third-party disclosure waives the attorney-client privilege—is inapplicable here. Pl.'s Br. in Support at 8. Specifically, First Mercury states that while a common interest may exist between Markowitz and Masarwa in this action, "at the time the subject communications were made, which was in the underling[sic] legal malpractice case, Masarwa and Markowitz could not have been more adversarial, as Masarwa sued Markowitz." Id. Thus, First Mercury continues, Markowitz, Masarwa, and their attorneys, "were not coordinating their position at the time that the communications were made, and thus the purpose of the common interest exception has not been fulfilled." Id. To support this argument, First Mercury relies on the three part test articulated by the New Jersey Supreme Court in O'Boyle v. Borough of Longport, 218 N.J. 168, 190 (2014). This test requires that for the common interest doctrine to apply (1) the disclosure be made due to actual or anticipated litigation; (2) for the purposes of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties. First Mercury argues that the July 24, 2013 document request violated the third component of the O'Boyle test, as this was a request by the Defendants to an "adverse attorney, the attorney for [First Mercury]." Id. at 9. Ultimately, First Mercury argues that Masarwa's counsel's request that First Mercury produce over 50 "pieces of correspondence" between Capehart and either First Mercury or Markowitz, in conjunction with Markowitz's letter was an unambiguous waiver of any privilege. Id. at 9–10.

### b.     Markowitz, Masarwa, and Two Jays' Argument

Markowitz, Masarwa and Two Jays (collectively "Defendants") contend that the Third Circuit's rejection of selective waiver doctrine in Westinghouse, and cited in support by First Mercury is inapplicable because that case, and others cited by First Mercury, involve the intentional disclosure of privileged material to an adversary's counsel, or in a prior litigation, or to the government. Memorandum of Law in Support of Defendants' Cross-Motion ("Cross-Motion") at 8, ECF No. 68-1. Rather here, they assert that the intentional disclosure was "made by a non-party (Capehart) to a codefendant (Masarwa), and was not intended to be made to an adversary (First Mercury)." Id. This, they urge, brings the disclosure under the purview of the common interest doctrine. Id. at 10. Markowitz, Masarwa and Two Jays agree with First Mercury that O'Boyle sets forth the relevant factors for the Court to consider when evaluating a whether the

common interest doctrine applies. Id. However, unlike First Mercury, Defendants argue that each of the three factors have been satisfied. Id. at 10–14. Specifically, with regard to the third factor—that the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties—Defendants argue that Markowitz's June 26, 2013 letter to Capehart authorizing and requesting that they forward". . . a complete copy of [Capehart's] file related to its defense of [Markowitz] . . . " to J. Barry Cocoziello, demonstrates that Markowitz intended only a limited waiver of the attorney-client privilege, and not an indiscriminate waiver. Cross-Motion, at 12–13. Defendants further argue that the Capehart documents are protected by the common interest exception to waiver of attorney-client privilege because they have fully satisfied the O'Boyle requirements as "both the waiver and the subsequent disclosure occurred during the course of this case, and not during the underlying malpractice action." Cross-Motion at 11. Markowitz therefore requests that the Court deny First Mercury's motion, and further issue an Order precluding the use of any of the Capehart documents, including the January 9, 2012 email.

**III.    Discussion**

The parties disagree about whether Markowitz's letter to Bejsiuk operated as a partial waiver of the attorney-client privilege such that information could be shared with counsel for Masarwa and Two-Jays, and withheld from disclosure from First Mercury. However, the Court agrees with Defendants' position that Westinghouse is inapplicable to this case because, to this Court, the issue presented in these applications is not whether Markowitz partially waived privilege to permit Masarwa and Two Jays to see his privileged communications with Bejsiuk, but rather, whether the privilege was waived at all under the common interest rule.

It is axiomatic that the attorney-client privilege protects communications between attorneys and clients from compelled disclosure. N.J.S.A. 2A:84A-20. It applies to "any communication that satisfies the following elements: it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." Teleglobe Commc'ns Corp. v. BCE, Inc., 493 F.3d 345, 359 (3d Cir. 2007). However, "disclosing a communication to a third party unquestionably waives the privilege." Id. at 361; see also Stengart v. Loving Care Agency, Inc., 201 N.J. 300, 323 (2010).

But, there are recognized exceptions to the general rule of disclosure. For example, the attorney-client privilege has been extended to communications between different persons or separate corporations when the communications are part of an ongoing and joint effort to set up a common defense strategy. Eisenberg v. Gagnon, 766 F.2d 770, 787 (3d Cir. 1985), cert. denied, 474 U.S. 946 (1985); O'Boyle v. Borough of Longport, 218 N.J. at 198–99. This rule "enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege." Haines v. Liggett Group Inc., 975 F.2d 81, 94 (3d Cir. 1992) (quotations and citations omitted). Further, under this rule although an attorney actually represents only one party there is no waiver of the attorney-client privilege by disclosure of privileged communications to third parties with a common interest. Id. This permits counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege. Id. Indeed, the common interest rule operates as an exception to the disclosure rule, meaning that any disclosures to a third party operating under a common interest would not be a waiver of privilege at all.

To establish that the common interest rule applies to a disclosed communication, the asserting party must show that: 1) the disclosure is made due to actual or anticipated litigation, 2) for the purpose of furthering a common interest, and 3) the disclosure is made in a manner to preserve the confidentiality of the disclosed material and to prevent disclosure to adverse parties. O'Boyle 218 N.J. at 198–99 (citing LaPorta v. Gloucester County Bd. of Chosen Freeholders, 340 N.J. Super. 254, 262 (App. Div. 2001). Communications between counsel for one party and a representative of another party with a common interest will preserve the privileged nature of the disclosed information. Id. Moreover, the common interest need not be identical; a common purpose will suffice. Id.

The Court is guided by the admonition of Harding v. Dana Transp. that "because the privilege obstructs the search for the truth and because its benefits are, at best, indirect and speculative, it must be strictly confined within the narrowest possible limits consistent with the logic of its principle." 914 F. Supp. 1084, 1091 (D.N.J. 1996). However, where a party has protected its privileges, the Court has no reservation in directing that any document or information obtained in breach of that privilege be returned, and a party directed to proceed as if they never obtained that information. But, a party must be vigilant in its efforts to protect that privilege. Indeed, the O'Boyle factors require vigilance as set forth by the third factor: "the disclosure is made in a manner to preserve the confidentiality of the disclosed material and to prevent disclosure to adverse parties."

While Defendants assert that they have fully satisfied the O'Boyle requirements, this Court disagrees. Defendants argue that the disclosure was made while Markowitz, Masarwa, and Two Jays' interests were aligned during the course of this litigation, not while the parties were in an adversarial relationship during the course of the underlying action, and Markowitz's letter indicated that the disclosure was to be made to counsel for Masarwa and Two Jays. Cross-Motion at 11–12. However, Markowitz's letter to Bejsiuk indicating that he had "agreed to waive any attorney/client privilege [he has] or may have with First Mercury Insurance Company, Crum & Forster, and/or Capehart Scatchard[,] P.A" undermines the position Defendants now assert. As referenced above, the common interest rule operates as an exception to the general rule of disclosure, meaning that a disclosure of documents to a third party would not waive the privilege. Markowitz, an attorney himself, acting in conjunction with counsel for Masarwa and Two Jays should have realized that by issuing a blanket waiver of privilege to Bejsiuk, he risked disclosing these documents to other parties. Further, although a formal agreement is not required to invoke the protections of the common interest rule, Defendants have not provided the Court with any document that hints that these documents were being provided in accordance with a joint defense agreement, or pursuant to a common interest exception. Moreover, not only did Defendants not take measures to prevent disclosure to an adversary, but specifically asked First Mercury for the documents for which they are now seeking to claim privilege. Simply put, this application seeks to unring the bell.

By telling Bejsiuk that he intended to waive his privilege to these documents, Markowitz's actions cannot be said to have complied with the third O'Boyle factor. Indeed, Bejsiuk's actions in providing the documents to both First Mercury and counsel for Masarwa and Two Jays indicates that Markowitz's directions were not made in a manner to preserve confidentiality of the material and to prevent disclosure to adverse parties. Had Markowitz done more to protect his privilege and protect these documents from an inadvertent disclosure to his adversaries, perhaps the

common interest exception could have applied. However, given Markowitz's directive to Bejsiuk that he was waiving privilege as to the documents, the Court cannot find that the Markowitz's attorney-client privilege in these documents extends to Masarwa and Two Jays pursuant to the common interest rule.

## IV. Conclusion

The Court concludes that Markowitz waived his attorney-client privilege as it relates to the Capehart Documents. Therefore for the foregoing reasons; and for other good cause shown,

**IT IS** on this 1st day of September, 2015,

**ORDERED** that First Mercury's motion determining that Markowitz has waived privilege as to the Capehart Documents [ECF No. 67] is **GRANTED**; and it is further

**ORDERED** that Markowitz's cross-motion to preclude First Mercury from using any of the Capehart Documents [ECF No. 68] is **DENIED**; and it is further

**ORDERED** that the Clerk shall terminate docket entry numbers 67 and 68.

*/s/Cathy L. Waldor*
**HON. CATHY L. WALDOR**
**United States Magistrate Judge**